All rise. Hear ye, hear ye, hear ye. The Illinois 3rd District Appellate Court is now in session. The Honorable William E. Holdridge, Justice for Dyer. Please be seated. Thank you. Will the clerk please call the first case. Case number three, 090983, People of the State of Illinois, Appellee by Mr. Robert Hanson v. Daryl Rippatoe, Appellant by Mr. Charles Hoffman. Mr. Hoffman, you may proceed. Thank you, Justice Holdridge. Good morning, Your Honors. Good morning. My name is Charles Hoffman. I represent the appellant, Mr. Daryl Rippatoe. This is the second time that this case appears before this court. The first time, the court demanded the case for a factual inquiry into Mr. Rippatoe's post-trial claims of ineffective assistance of counsel to determine whether the counsel should be appointed to investigate those claims. At the conclusion of that hearing, the trial judge denied Mr. Rippatoe's request for a new lawyer. We've raised two issues in this appeal. The first issue is that the trial court erred in requiring Mr. Rippatoe to remain shackled during the entire evidentiary hearing below. And second, that the trial judge erred in considering his personal knowledge of defense counsel's performance in other cases in deciding the effectiveness of counsel's performance in this case. And if time permits, I'd like to address both issues. The first issue is the shackling issue. When Mr. Rippatoe was brought into court for the factual inquiry, he was, as referred to in the record, double shackled. There's no question that keeping Mr. Rippatoe shackled during this hearing was an error. In American courtrooms, we just don't keep defendants in chains without a very compelling reason. The only question really on appeal is whether being shackled deprived Mr. Rippatoe of a fair hearing on remand. And we contend it did, largely because of the very unusual facts of this case. The facts here are different from literally every other shackling case that I've found, in that, unlike most shackled defendants, Mr. Rippatoe was not merely a passive observer at this hearing. He was not just the defendant. He also was a pro se defendant who had to personally make his arguments to the court. And not only that, he was a sworn witness on his own behalf who gave testimony at the remand hearing while shackled. How did this shackling interfere counsel with either one or both of those activities in the courtroom? Well, Judge, I think the problem in answering that question is we don't know how it affected Mr. Rippatoe or the judge. And I refer the court to Deck v. Missouri, which was a case from the United States Supreme Court, in which the court said the practice of shackling will often have negative effects, but like the consequences of compelling a defendant to wear prison clothing or forcing him to stand trial while medicated, these effects can be shown from a transcript. We can be surprised that Mr. Rippatoe was handicapped in that he was shackled. We know- He, Mr. Rippatoe, did not have counsel he needed to consult with or communicate with, did he? No. Now, there are three reasons that the courts say defendants shouldn't be shackled. First is the negative impact on the jury. Obviously, that doesn't apply here. The second is the ability to assist counsel. Now, that doesn't apply technically, but Mr. Rippatoe served as his own counsel. So the question is, did it negatively impact his ability to make cogent arguments to the court? And the third reason, which totally applies here, is that shackling inherently demeans the dignity of the proceedings. Now, how did it affect Mr. Rippatoe? Well, what the Supreme Court also said in the Deck case was shackles impose physical burdens and pains and tend to confuse and embarrass a defendant's mental faculties. That's the United States Supreme Court. How do we know how it affected him? It certainly must have been humiliating. Mr. Rippatoe must have felt less, let me say, than a human being forced to remain in shackles for no reason. But in the Deck case, he was the defendant represented by counsel. The defendant was represented by counsel. But you're saying that it interfered with his ability to consult with counsel or interact with counsel because it interfered with his mental faculties? I'm saying that since the Supreme Court in Deck said that shackles impose physical burdens and pains and confuse a defendant's mental faculties, it impaired Mr. Rippatoe's ability to serve as his own counsel. Okay. But you don't have anything specific about how it was impaired? No, no. There's nothing specific that you can point to in the record? No, there isn't, unfortunately, Justice Carter. And it's unknowable, and that's what the Supreme Court said in Deck. Unfortunately, it's unknowable. What I do know is that every court in Illinois, the Supreme Court and every appellate court has said you do not shackle defendants unless there's a finding that it's absolutely necessary. And I think the reason the courts do that, the reason that that's the fundamental rule, is that you don't know the effect. Now, were Mr. Rippatoe's arguments less cogent to the trial court because he was shackled? We don't know. What we do know is that he – I'm gesturing. One of the issues that's not really developed in the briefs is most of the cases dealing with shackling, jury or non-jury, deal with pre-conviction matters. Correct. So post-conviction matters. Correct. Is there a case specifically on post-conviction matters where shackling is an issue? I didn't see any cases on post-conviction that were shackled. And I understand that Mr. Rippatoe doesn't have the presumption of innocence, which, of course, is one of the reasons that shackling is disallowed because obviously a person who's shackled looks guilty even though they may not be guilty. And that's the distinction I'm asking about because that really isn't developed in the briefs. It's touched upon maybe. But there is a difference between that post-conviction matter and the pre-conviction issues where defendants are securing before the court. I think there's a distinction in the first reason for shackling, which is you don't want a defendant shackled in front of a jury who's determining the defendant's guilt or innocence. But there are three reasons. And the rule of this case, the second and the third reasons, the hammering of the ability to assist counsel in this case himself and demeaning the integrity of the judicial process. Obviously, sentencing is an important part of the judicial process. The Illinois Supreme Court has even said post-trial motions are a critical stage in a criminal case. Obviously, Mr. Rippenfeld would have the right to counsel in a post-trial hearing. I think just because the first reason doesn't apply doesn't mean that this wasn't inherent. And that's the reason I was asking more about some specific examples because I know there's – in the cases they talk about, some things are unknowable. But other factors are – people point to something where they weren't able to assist counsel, they weren't able to do this. That we don't have here. I don't know, Justice Carter, that in the cases simply pointing out that the inability to assist counsel gets very specific beyond that. I don't know that the case law says the defendant was unable to whisper to counsel, the defendant was unable to write a note to counsel. I think it's just the inherent fact of being shackled inhibits the defendant's ability to participate in the proceedings. On the other hand, I've never seen a case in which a defendant was required to testify either pre-trial, at trial, or post-trial while wearing shackles. This case is different. I'll grant you that. I don't know that its outcome determined it to be different. This was an important hearing in Mr. Ripito's case. He alleged that his trial lawyer was ineffective at trial. Although he no longer had the presumption of innocence, this hearing was really about whether he should get the presumption of innocence back because his lawyer didn't do an effective job at trial. But to show prejudice doesn't Mr. Ripito have to demonstrate some measure of prejudice against him that there is not – it's not enough just to say because of the shackling demeans the judicial process that I was not afforded a fair trial because of the shackles. Doesn't he have to produce some evidence that in some way – not just the shackles, but how the shackles inhibited his ability to represent himself? He didn't have papers that he could not think clearly. He doesn't seem to make any of these allegations. Well, he doesn't, I think, because I don't think Mr. Ripito had any clue that he had the right not to be shackled in the hearing. And, of course, there was no hearing afterward in which he could say this is how it affected me. Now, if the judge had said, which I think the judge should have said, Mr. Ripito, you're in shackles. Would you like the shackles removed? Mr. Ripito may have been able to say, yes, Judge, I really would. These are hurting. These are biting into my wrists. And Justice O'Brien, he wasn't just shackled. He was double shackled, which although the record doesn't describe what that means, I've seen defendants who are not in the courtroom but in prison who are double shackled, which I think means he's handcuffed and he has leg irons. And if you just picture – Well, the record shows that he was unable to really raise his hand and take the oath. Yes. When the judge wanted him to be sworn in as a witness, he said, Judge, I don't think I can do that. I mean he couldn't even be sworn in as a witness. How was he to make his arguments to the court? If I were standing in front of this court double shackled, I don't think my – I don't know if my argument is persuasive today, but I think it would probably be much less persuasive. I tend to gesture. I think gestures are important when you're trying to persuade someone. He couldn't move. He was double shackled. And although I'm focusing today really more on the effect it had on Mr. Ripito, I think we can safely assume that it had some effect on the judge too. And I know judges aren't supposed to be affected by things, but let me suggest that judges are also human. And a person in shackles looks less credible than a person not in shackles. A person in shackles looks more dangerous than a person not in shackles. The rule is no defendant should be kept in shackles without a hearing and a determination by the judge that it's absolutely necessary. That didn't happen in this case. I can't give this court a specific reason why he was prejudiced. I just asked the court to picture what happened, to understand that it was unnecessary, and to say that it did demean the dignity of the judicial proceedings below. And also, I think undoubtedly hampered Mr. Ripito and his ability to make a cogent argument and to testify as a credible witness. Well, actually, why we're asking these questions is there's this line between your burden under Allen to persuade the court that there's plain error, there's prejudicial and plain error. And the fact that this is not per se prejudicial. I mean, Allen teaches us that it's not a per se violation, not a per se plain error. No, and actually, Justice Carter, I would ask you not to find that this issue is waived. I know that Mr. Ripito didn't object. But again, I don't think Mr. Ripito even knew that he had the right not to be shackled. And I think without the court advising him of that right, it simply would be unfair to hold this issue waived. I think this court should relax the waiver rule in this case and go to the merits, which takes it out of the plain error rule cases. However, if you find that this issue was waived, I think it is plain error. Mr. Ripito had no one there to defend his rights. He was unrepresented. He was pro se, which is another reason why I think the court should relax the waiver rule in this case. But are we committed to relax the waiver rule if there's a forfeiture on the argument? Of course you are. Waiver is simply an administrative rule, and this court can relax it when fundamental fairness requires it. Do you wish to go to your second? Yes. Thank you. The second issue is that the judge erred in considering his knowledge of defense counsel's performance in other cases in determining whether counsel was ineffective in this case. The major claim of ineffective assistance here was defense counsel's failure to call Floyd Robinson as a defense witness. Mr. Robinson would have contradicted the testimony of the state's main witnesses that Mr. Ripito's two-year-old son, Zekiel, was present during the commission of this crime. The trial judge's remarks are fairly lengthy about his knowledge of defense counsel's performance in other cases, his complimenting defense counsel's performance in other cases. I won't repeat them here. They are quoted in our brief at page 17. You have two minutes, Floyd. Thank you. It's certainly understandable, just given human nature, that a judge, in deciding the claim of ineffective assistance against a lawyer who appears before him or her on a regular basis, who the judge knows as a practicing lawyer, the judge would naturally be inclined, I think, to consider the judge's knowledge of the overall ability of that lawyer. But while that may be a natural tendency, the fact is it's still improper. And we know it's improper because the Illinois Supreme Court said so in People v. Steidle. And the remarks, if you look, the remarks of the trial judge in the Steidle case are virtually identical to the remarks of the judge in this case. And in Steidle, the Supreme Court said the judge's statements upon denial of the evidentiary hearing indicate he relied on personal knowledge of the defense counsel's performance in previous cases to determine his competency in the instant case. In doing so, the judge considered information outside the record, which is prejudicial error. It's been 13 years since Steidle. I think it's time for this court to gently remind trial judges that it is improper, even though it's a natural inclination, to consider the performance of counsel who regularly appear before them in other cases in deciding the effectiveness of the lawyer in the case before them. Because the trial judge here did exactly that, we'd ask this court to vacate the judge's denial of Mr. Rigato's request for new counsel to investigate his claims of ineffective assistance in counsel. Would that be the appropriate relief or would the appropriate relief, if granted, be a remand for a new criminal hearing? That's pretty much what we're asking for. For a remand for the judge to consider this request for new counsel, yes. And we would ask that it go before a different judge, which is the relief that we've committed to Steidle. If there are no further questions, I thank the court for its time. Thank you, Mr. Oglin. Mr. Hanson, you may respond. Good morning, Your Honors. May it please the court, counsel. Largely, I would rely on the points I raised in my brief, but I would elaborate on them as follows. Allen, the Perry-Allen case, speaks of the unnecessary restraint running afoul of the presumption of innocence. That runs throughout the Perry-Allen case. This is not a defendant who's presumed innocent. He's not even presumed guilty. He's certified guilty. He's been found guilty by a jury and convicted. So that immediately takes it outside many of the considerations of Allen. The defendant did not object below. Waiver. Obviously, Your Honors have the power to ignore waiver, as my friend, Mr. Hoffman, pointed out. The defendant, in his opening brief, did not claim there was a plain error. Further, the defendant has not borne the plain error burden of prejudice. This is not a harmless error situation, but rather a plain error where the defendant, not the people, has the burden of prejudice. Allen, even under its situation involving the presumption of innocence, said there's to be a very limited application of plain error. In Allen, there was no showing of the presumption of innocence being affected. There was no showing regarding the ability or inability to assist counsel being affected, and there was no showing regarding the dignity of the proceedings being compromised. Here we're only dealing with that third factor, the dignity of the proceedings. As in Allen, our point here in this post-trial motion involving no jury, involving a judge whom, under our system, and if the system is anything, it's a system that holds. We have faith in judges, barring some showing to the contrary that the judge is unsusceptible to prejudicial influences where we may well find a jury of laymen is susceptible. We believe a judge to be fair. There is zero in this record to indicate this judge was anything other than scrupulously fair. This is just a motion, not a trial. The fact that the shackling affected the defendant's self-image and the debt case refers to that briefly. Your Honors, I think we tread dangerous ground if we get too involved in that. We are dealing with a court of law, not principles of sociology, social psychology, or psychology. Further, there is no indication here, zero indication in this record, that the judge ignored the law somehow and became prejudiced against the defendant because of the shackling. Look, in all candor, it would have been better if he hadn't been shackled. We wouldn't be here, certainly, on the first issue. He was. The point is it wasn't the stuff of reversible error. There was simply not plain reversible error here. On the second point, the defendant's only claim in his opening brief on this point was that the judge referred to knowing of defense counsel's performance in other cases. That's the only point he makes. There is no complaint in his opening brief concerning the judge's reasoning for denying the appointment of counsel. Again, there was waiver and no plain error for the same reasons as I discussed with Your Honors in my brief and just here as to the first issue. Although this is not a harmless error case where the burden would be on the people, but again a plain error case where the burden is on the defendant, harmless error analysis is helpful. Where it looks to the judge considering facts outside the record of being harmless error when it looks like without that error the result would not have been different, and that is certainly the case here. Defense counsel very clearly and fairly sets out the judge's comments. His complaint of comments are in pages R618 and R619 of the record. Please, as I know you undoubtedly will, it's a paragraph, look through those comments and look at everything the judge is saying. He's saying he had the experience in all these years on the bench to recognize ineffective assistance of counsel. He went pretty far on this case, didn't he? Very similar to the style of the case itself. It's pretty similar to style, yes. And he said that his court had the opportunity from time to time and occasion to observe Mr. Miller for trial counsel. Conduct court where he had the chance, he had previous experience with Mr. Miller, and he was acquainted with his cases, that he conducted cases in front of him, and even when he sat on the bench. He said all those things. And then he talked about one case in particular, some other case, that he walked out of the door with a couple taps at his back on that case, and talked about identification marks. I mean he went into a lot of detail about other cases. He said all that, but the first sentence there, he said he also said that in over 30 years he'd had experience of seeing wide ranges of ability of various counsel. Then he did speak, as Your Honor absolutely accurately stated, regarding this attorney. He said this court has found Mr. Miller, it's not about this case, but this court has found Mr. Miller to be a respectable member of the bar, a member of the court, and has always been candid with this court. Absolutely. And is that a proper understanding? Oh, he shouldn't have said that. No, but it's not reversible error. No, the case is quite comparable to style in the facts. And yes, would it get any better if he had said those words? But, Your Honors, he said he based his decision, the matter he had to decide, he said he based it on the record. Quote, this court cannot make a determination based upon this record that Mr. Miller's standards fell below a standard of reasonableness. This case is unlike the style case where there was no such statement by the judge that, hey, complimentary things said about defense counsel aside, I'm basing it on the record. And style did not involve an evidentiary hearing, which the judge heard here. He had the evidentiary hearing that he was remanded. He had the matter remanded to him to hear. He heard it and then decided. The judge's decision was just based on the record, not his knowledge of defense counsel as he went on to state on the record and in great detail at pages, I think, 618, 619, maybe as far as 620, that the defense counsel had a strategic reason to not call Floyd Robinson as a witness, and he stated what that was. But, indeed, the fact that he found a strategic reason is of no importance in one aspect, in that the defendant is not arguing on appeal that the judge heard in that regard. But it does show that the judge made his decision on this, in essence, crankled hearing based on what the record, the evidence presented, indicated regarding defense counsel's performance in this case on the record. Not, although he should not have said what he said about having seen him in the other cases as Judge Carter actually accurately reported, and as he set out in the brief, he should not have said that. But, nonetheless, this is not the stuff of reversible error. I mean, I'm having trouble trying to separate those other comments out from the later comments that you referred to, because if it had an impact, Stilwell reversed them and remanded them. Stilwell did, but, again, in Stilwell, there was no statement about, I'm deciding this based on the record. Stilwell didn't involve an evidentiary hearing. That is my point largely, Your Honor. That concludes my comment, Your Honors, unless you have any questions. I don't believe we do, Mr. Hanson. Thank you. Mr. Hoffman, you may reply. Thank you. On the question of whether either of these issues are weighed, first, on the shackling issue, I point the court to People v. Buckner, which this court decided in 05, an opinion written by Justice Holdridge. In which he said—excuse me, I don't know how to pronounce it. He said that even if a defendant failed to object, we think this is such a fundamental requirement that we would relax the waiver rule. So we would rely on the Buckner opinion for relaxation of the waiver rule on the shackling issue. Okay, can we rely on Buckner, Dr. Harron, and Allen on the cases in which we report? Allen said shackling is not automatically reversible error. Excuse me, not automatically plain error. Allen didn't hold that it could never be plain error. And I would point this court to Justice McDade's analysis in her dissent in the Woods case, which I believe the State Secretary did its brief, in which she explains why, even after Allen, plain error is still available. It's not automatic, obviously, but it's still available. But again, he would argue this issue isn't waived because you can relax the waiver rule and reach it on the merits. That's my question. Can you really relax the waiver rule in light of the recent Supreme Court cases telling us that if there's a waiver or a forfeiture, we don't have that ability. They have the ability, we don't have the ability. Well, like many things, Justice Carter, I think there are cases that go both ways. There are cases that do still to this day say that if a waiver or procedural default is an administrative rule, that the courts can go beyond what fundamental fairness requires. And in this particular court, the argument is administrative rule. Yes. And I would also point out here that – That's an absent formal administrative rule from the Supreme Court. Yes, yes. I think this court can relax the waiver rule. Again, I would ask this court not to find the issue waived because Mr. Ripetoe never really knew he had the right and he had no one to object on his behalf. On the second issue, I think it's clear from the Supreme Court itself that that issue was not waived, the stitle issue was not waived, even though there was no objection. And we've cited the Dameron case from the Illinois Supreme Court in our brief. In Dameron, the court considered evidence outside the record. The same error we complain of here. And Dameron specifically said, a challenge to the trial judge's reliance on evidence outside the record is not waived by the defendant's failure to object. So we're asking this court to consider our second issue on the merits also. And my final point, I would respectfully disagree with counsel on the difference in the judge's remarks to the stitle here. It's true that the judge didn't make a statement in the midst of his many compliments to trial counsel that Mr. Ripetoe hadn't shown ineffective assistance here. But if you look at the remarks in stitle, within the judge's remarks there, he also said, and I quote, here, the court is aware of a homicide case tried by Petitioner's counsel. In that case, the defendant was found not guilty by a jury in spite of eyewitness testimony, probably attributable to counsel's tactics of praising counsel. The judge in stitle then said, in the pending post-conviction petition, the court is of the opinion that Petitioner has failed to establish ineffective assistance of counsel. It's incredible how close the remarks of the trial judge here are to the remarks of the trial judge in stitle. They almost track each other word to word. And for that reason, we again ask that this court reverse the trial court's ruling. Thank you. Thank you, Mr. Hoffman. Thank you, counsel, both, for your high arguments in this matter this morning. The case will be taken under advisement, and a written disposition will issue. At this time—